# In the United States Court of Federal Claims

**OFFICE OF SPECIAL MASTERS**

* * * * * * * * * * * * * * * * * * * *
| | |
|---|---|
| TYLER JOSSART, | * |
| | *    No. 15-1377V |
|       Petitioner, | *    Special Master Christian J. Moran |
| | * |
| v. | * |
| | * |
| SECRETARY OF HEALTH | *    Filed: July 23, 2024 |
| AND HUMAN SERVICES, | * |
| | * |
|       Respondent. | * |

* * * * * * * * * * * * * * * * * * * *

Danielle Strait, Maglio Christopher & Toale, Seattle, WA, for petitioner;
Debra A. Filteau Begley, United States Dep't of Justice, Washington, DC for respondent.

## ORDER DENYING MOTION FOR REDACTION[1]

      Tyler Jossart alleged that a human papillomavirus vaccine significantly aggravated his postural orthopedic tachycardia syndrome. He was found not to have met his burden of proof and compensation was denied. Decision, issued May 22, 2024. Pursuant to 42 U.S.C. § 300aa–12(d)(4) and Vaccine Rule 18(b), he filed a motion requesting that his name and the name of his mother be redacted to initials. For the reasons explained below, the motion is DENIED.

---

[1] Because this order contains a reasoned explanation for the action taken in this case, it must be made publicly accessible and will be posted on the United States Court of Federal Claims' website, and/or at https://www.govinfo.gov/app/collection/uscourts/national/cofc, in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2018) (Federal Management and Promotion of Electronic Government Services). Pursuant to Vaccine Rule 18(b), the parties have 14 days to file a motion proposing redaction of medical information or other information described in 42 U.S.C. § 300aa-12(d)(4). Any redactions ordered by the special master will appear in the document posted on the website.

## Public Access to Information about Petitioners in the Vaccine Program

The history of public access to information contained in court decisions and the history of the creation of the Vaccine Program[2] provide a context for Mr. Jossart's motions to redact. Both histories suggest that redaction of a litigant's name is available in relatively limited circumstances.

In American jurisprudence, the public can generally access court documents. Nixon v. Warner Comm. Inc., 435 U.S. 589, 597 (1978). As part of this country's inherited traditions, Congress may be presumed to know this principle.

In the mid-1980s, Congress investigated vaccines because of concerns about their safety and to stabilize the market for manufacturers. Bruesewitz v. Wyeth, LLC., 562 U.S. 223, 226 (2011). In the 99th Congress, competing proposals were introduced. See Figueroa v. Sec'y of Health & Human Servs., 715 F.3d 1314, 1323 (Fed. Cir. 2013), Vijil v. Sec'y of Health & Human Servs., No. 91-1132V, 1993 WL 177007, at *4-5 (Fed. Cl. Spec. Mstr. May 7, 1993).

One of these proposals, which was introduced on April 2, 1985, was Senate Bill 827. S. 827 would have created a compensation program located in the District Court for the District of Columbia in which special masters would preside. S. 827, 99th Cong., § 2104(b), § 2104(d)(1) (1st Sess. 1985). In addition to a compensation program, S. 827 contained provisions to improve the safety of vaccines. However, the first session of the 99th Congress adjourned without acting on any of the proposed legislation.

In the second session of the 99th Congress, the House and Senate considered different bills. The version of S. 827 from September 24, 1986 proposed to improve the safety of vaccines. S. 827, 99th Cong. (2d Sess. 1986). It appears that S. 827 did not include a compensation program.

However, the legislation that Congress eventually enacted did contain a compensation program. Congress placed adjudication of vaccine compensation program claims in the district courts. Pub. L. 99-660 § 2112(a). In this legislation, provisions related to discovery and disclosure of information were combined in one section. Id. at § 2112(c), codified at 42 U.S.C. § 300aa–12(c)(2) (1988).

---

[2] For information about the legislation that created the Vaccine Program, this order draws upon a summary provided in Lainie Rutkow et al., Balancing Consumer and Industry Interests in Public Health: The National Vaccine Injury Compensation Program and Its Influence During the Last Two Decades, 111 Penn St. L. Rev. 681 (2007).

Congress's selection of district courts with their tradition of openness to the public suggests that Congress intended for the normal rules about access to judicial decisions to apply. Castagna v. Sec'y of Health & Human Servs., No. 99-411V, 2011 WL 4348135, at *1 (Fed. Cl. Spec. Mstr. Aug. 25, 2011).

In 1987, Congress simultaneously funded the Vaccine Program and amended the Vaccine Act. The 1987 amendments did not vary the disclosure provisions. However, in 1987, amendments changed the venue for filing claims from the district courts to the Claims Court. Pub. L. 100-203 § 4307(1); see also Milik v. Sec'y of Health & Human Servs., 822 F.3d 1367, 1375 (Fed. Cir. 2016); Stotts v. Sec'y of Health & Human Servs., 23 Cl. Ct. 352, 358 n.7 (1991).

The Vaccine Program became effective on October 1, 1988. Pub. L. 100-203 § 4302. As initially conceived, special masters were issuing reports, subject to de novo review by judges of the Claims Court. See 42 U.S.C. § 300aa–12(d) (1988). In this context, reports from special masters and decisions from Claims Court judges started to become available to the public. E.g., Bell v. Sec'y of Health & Human Servs., 18 Cl. Ct. 751 (1989) (reproducing special master's report); Philpott v. Sec'y of Health & Human Servs., No. 88-20V, 1989 WL 250073 (Cl. Ct. Spec. Mstr. Aug. 4, 1989).

Congress found that the parties were too litigious in the early years of the Program. H.R. Rep. No. 101-386, at 512 (1989) (Conf. Rep.), reprinted in 1989 U.S.C.C.A.N. 3018, 3115. Congress amended the Vaccine Program in 1989, giving special masters the authority to issue decisions, which could be subject to a motion for review. Pub. L. 101-239 § 6601(h), codified at 42 U.S.C. § 300aa–12(d) and (e).

Congress also added a provision allowing limited redaction of decisions of special masters. Pub. L. 101-239 § 6601(g)(2). The reason Congress added this provision is not clear. See Anderson v. Sec'y of Health & Human Servs., No. 08-396V, 2014 WL 3294656, at *2 n.7 (Fed. Cl. Spec. Mstr. June 4, 2014).

Although Congress authorized redaction of decisions, few litigants requested redaction for many years. Special masters tended to allow redaction without much analysis. After a surge in requests for redaction, the then-Chief Special Master issued an order generally narrowing redaction. Langland v. Sec'y of Health & Human Servs., No. 07-36V, 2011 WL 802695 (Fed. Cl. Spec. Mstr. Feb. 3, 2011). On a motion for review, the Court of Federal Claims endorsed the special master's analysis regarding redaction in a brief footnote. 109 Fed. Cl. 421, 424 n.1 (2013).

The Court of Federal Claims analyzed the special masters' position regarding redaction more extensively in W.C. v. Sec'y of Health & Human Servs., 100 Fed. Cl. 440, 456-61 (2011), aff'd on nonrelevant grounds, 704 F.3d 1352 (Fed. Cir. 2013). W.C. disagreed with the approach taken and asserted that the Freedom of Information Act ("FOIA") was a basis for evaluating redaction requests.

Shortly after W.C., the then-Chief Special Master issued another order regarding redaction. Castagna explored the topic in more depth and, again, found redaction was limited to narrow circumstances. 2011 WL 4348135.

After those orders were issued, the Court of Federal Claims has found special masters were not arbitrary and capricious in either denying redaction, or permitting redaction. Spahn v. Sec'y of Health & Human Servs., 133 Fed. Cl. 588, 604 (2017) (stating that the decision to redact is a question of law and holding that redaction of "the names of petitioner . . . and petitioner's treating physicians . . . are not the kind of medical, or confidential, or privileged, financial information that the Vaccine Act requires to be withheld from public view"); Lamare v. Sec'y of Health & Human Servs., 123 Fed. Cl. 497 (2015); R. K. v. Sec'y of Health & Human Servs., 125 Fed. Cl. 276 (2016); see also Tarsell v. United States, 133 Fed. Cl. 805 (2017) (denying petitioner's request to redact the names of all medical providers from the Court's Opinion and Order);[3] but see K.N. v. Sec'y of Health & Hum. Servs., 167 Fed. Cl. 142 (2023) (redacting name and birthdate of petitioner who was a minor for the majority of litigation, but not redacting name of mother who filed petition).

Against this background, Mr. Jossart filed his motion to redact.

**Procedural History Leading to the Motion to Redact**

Mr. Jossart alleged a human papillomavirus vaccine harmed him. Pet., filed Nov. 13, 2015. When he filed the petition, Mr. Jossart was nearly 20 years old.

Once the Secretary has received a petition, the Secretary "shall publish notice of such petition in the Federal Register." 42 U.S.C. § 300aa–12(b)(2). In this instant action, for Mr. Jossart, the Secretary did so on December 24, 2015.

---

[3] Although the caption to the order in Tarsell identifies the "United States" as the respondent, the "Secretary of Health and Human Services" is the respondent in Vaccine Program cases. 42 U.S.C. § 300aa–12(b)(1).

National Vaccine Injury Compensation Program; List of Petitions Received, 80 Fed. Reg. 80366, 80367 (item 61) (Dec. 24, 2015).

The remainder of the procedural history is relatively uneventful with respect to redaction. Mr. Jossart filed medical records and affidavits. The parties submitted reports from experts and then pre-hearing briefs.

With the documentary record sufficiently developed, a hearing was held over three days in March 2022. The parties argued their positions in briefs filed after the hearing. After consideration of all evidence, documentary and testimonial, the undersigned found that Mr. Jossart had failed to meet his burden of proof. Decision, issued May 22, 2024. Subsequently, on June 5, 2024, Mr. Jossart filed a motion to redact the May 22, 2024 Decision, requesting that his name and the name of his mother be reduced to initials.

The May 22, 2024 Decision has not been made available to the public. The public's access depends upon the outcome of Mr. Jossart's June 5, 2024 motion to redact. Mr. Jossart's motion to redact requested that his name and his mother's name be reduced to initials. His motion was approximately nine pages. Mr. Jossart argued that the release of his name may interfere with his employment.

The Secretary filed a response. After reviewing the legal basis for any motion for redaction, including Langland and W.C., the government refrained from taking any position. Resp't's Resp., filed June 17, 2024. Mr. Jossart reviewed those arguments. Pet'r's Reply, filed June 24, 2024. With that submission, Mr. Jossart's motion for redaction is ready for adjudication.

## Standards for Adjudication

For all issues, including evaluating a motion for redaction, the special master's duty "is to apply the law." Althen v. Sec'y of Health & Human Servs., 418 F.3d 1274, 1280 (Fed Cir. 2005). With respect to issues of public access to judicial decisions, the preferences of the parties are not binding. Reidell v. United States, 47 Fed. Cl. 209 (2000) (declining to vacate underlying decision as parties requested in settling the case). The Seventh Circuit (Posner, J.) has emphasized the need for trial courts to make their own assessment of requests to proceed anonymously and not to defer to the parties:

> [W]e would be remiss if we failed to point out that the privilege of suing or defending under a fictitious name should not be granted automatically even if the opposing party does not object. The use of fictitious names is

5

disfavored, and the judge has an independent duty to determine whether exceptional circumstances justify a departure from the normal method of proceeding in federal courts.

Doe v. Blue Cross & Blue Shield United of Wisconsin, 112 F.3d 869, 872 (7th Cir. 1997).  In an order written when presiding over a matter pending in the District Court of Delaware, Federal Circuit Judge Bryson made a similar point.  The litigants in complex civil cases use "the sealing privileged excessively, without careful consideration of whether it is appropriate in particular instances.  The problem for judges is that such requests are seldom opposed---the would-be opposing party has access to the materials and doesn't particularly care whether the public has access as well."  Lipocine, Inc. v. Clarus Therapeutics, Inc., C.A. No. 19-622, 2020 WL 4569473, at *7 (D. Del. Aug. 7, 2020) (denying motion to seal an order resolving a dispute over attorney-client privilege).[4]

For redaction, the starting point is the Vaccine Act.  Congress provided:

> a decision of a special master or the court in a proceeding shall be disclosed, except that if the decision is to include information –
>
> (i) which is trade secret or commercial or financial information which is privileged and confidential, or
>
> (ii) which are medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of privacy,
>
> and if the person who submitted such information objects to the inclusion of such information in the decision, the decision shall be disclosed without such information.

42 U.S.C. § 300aa–12(d)(4)(B).  As previously mentioned, Congress added this provision to the Vaccine Act as part of the 1989 amendments.  Pub. L. 101-239 § 6601(g)(2).  In the ensuing 30 years, the Federal Circuit has not had an occasion

---

[4] Although the passage quoted in the text uses the word "sealing," much of Judge Bryson's August 7, 2020 Opinion and Order discusses redaction.  Thus, the reasoning in Lipocine informs the analysis of Mr. Jossart's June 5, 2024 motion to redact, although Mr. Jossart does not request that the May 22, 2024 Decision be "sealed."  See Pet'r's Reply at 2.

to interpret this statutory provision.  Furthermore, the associated Vaccine Rule, Vaccine Rule 18(b), simply mirrors the statute.  Thus, there is an absence of binding authority about the meaning of the Vaccine Act's disclosure provision.

## Analysis

Mr. Jossart relies upon the requirements of redaction as set forth in W.C. and offers the general rationale that the decision might adversely impact his employment.

    A.    <u>Mr. Jossart's reliance on W.C.</u>

Mr. Jossart emphasizes the standards for redaction announced in W.C. Pet'r's Mot. at 7.  However, as an order from the Court of Federal Claims, W.C. is only persuasive (not binding) precedent in this case and the persuasiveness of W.C. has been mixed.  In some cases, special masters have followed W.C.  See, e.g., Ranjbar v. Sec'y of Health & Human Servs., No. 15-905V, 2016 WL 4191127 (Fed. Cl. Spec. Mstr. June 21, 2016) (redacting decision awarding damages to initials); C.S. v. Sec'y of Health & Human Servs., No. 07-293V, 2013 WL 4780019 (Fed. Cl. Spec. Mstr. Aug. 19, 2013) (authorizing redaction).  However, special masters have also disagreed with W.C. or narrowly limited W.C. to its facts.  See, e.g., Anderson, 2014 WL 3294656, at *6 (disagreeing with usefulness of FOIA comparison); House v. Sec'y of Health & Human Servs., No. 99–406V, 2012 WL 402040, at *5-6 (Fed. Cl. Spec. Mstr. Jan. 11, 2012) (declining to grant redaction and rejecting petitioner's argument that the Secretary bears the burden to show a compelling public interest to justify release of medical information); Pearson v. Sec'y of Health & Human Servs., No. 03–2751V, 2011 WL 4863717, at *5 (Fed. Cl. Spec. Mstr. Sept. 22, 2011) (declining to grant redaction and stating "Petitioner's preference to keep his damages award private is not a sufficient reason to satisfy the [statutory] criteria and justify redaction in this case").  Given this divergent treatment of W.C., it was incumbent on Mr. Jossart to establish the soundness of W.C. in his briefing.  But, he did not.

W.C. criticized the special master for beginning the analysis of whether decisions should be redacted with a general presumption that decisions of judicial officers are open to the public.  W.C. states an analogy to the openness of judicial files is "inapposite." 100 Fed. Cl. at 460.[5]  However, W.C. did not account for the

---

[5] While traditional litigation in courts differs in some respects from litigation in the Office of Special Masters, most differences such as speedier resolution are not about the public's access to information.  The obvious difference – the public cannot access material kept by the

series of legislation that placed the Office of Special Masters within the federal judiciary.  Under the presumption that Congress is assumed to be aware of background principles when enacting legislation, see Rhone Poulenc Agro, S.A. v. DeKalb Genetics Corp., 284 F.3d 1323, 1329 n.3 (Fed. Cir. 2002), it can be inferred that Congress's choice endorsed routine publication of decisions of special masters.  See Anderson, 2014 WL 3294656, at *3; Castagna, 2011 WL 4348135, at *10.

Although W.C. did not discuss Congress's placing of the Office of Special Masters within the Claims Court, W.C. relied upon two other legislative acts to support redaction.  First, W.C. cited 42 U.S.C. § 300aa–25(c).  100 Fed. Cl. at 457-58.  Second, W.C. cited a portion of legislative history, S. Rep. No. 99-483 (1986).  Id. at 457.  However, neither informs the analysis of whether special masters should redact petitioner's names from their decisions.

Section 25 is part of title 42, chapter 6A, subchapter XIX, part 2, subpart C, which is captioned "Assuring a safer childhood vaccination program in United States."  Congress directed health care providers to record all vaccine administrations and to report possible adverse reactions to the Secretary.  These reports of possible adverse vaccine reactions are submitted to the Vaccine Adverse Event Reporting System ("VAERS").  See Adverse Event Reporting for Childhood Vaccines, 53 Fed. Reg. 10565 (Apr. 1, 1988).  In this context, Congress forbade the Secretary from releasing names of vaccine recipients.

In contrast, the portion of the Vaccine Program that concerns special masters is found within title 42, chapter 6A, subchapter XIX, part 2, subpart A, which is captioned "Program requirements."  This provision does not explicitly forbid special masters from including names of petitioners in their decisions.  Congress's choice to prevent disclosure of identifying information in one subpart, for the purpose of gathering vaccine administration data, implies that a disclosure of the same information under a different subpart, for the purpose of adjudicating vaccine claims, is permitted.  See Figueroa, 715 F.3d at 1322-23 (discussing interpretive canon expressio unius est exclusion alteris).

Similarly, Senate Report No. 99-483, which W.C. cited, was associated with S. 827 as introduced on September 24, 1986.  That version of S. 827 pertains to the Secretary's anticipated efforts to improve the safety of vaccines and did not

---

Clerk's Office, see 42 U.S.C. § 300aa–12(d)(4) – is immediately contrasted by saying the public can access special masters' decisions.

contain a compensation program.  See Castagna, 2011 WL 4348135, at *6 n.8. Thus, the legislative history associated with S. 827 appears to shed little light on whether a compensation program should redact decisions of judicial officers.

For these reasons, neither Mr. Jossart nor W.C. justifies turning away from the principle within the federal judiciary that promotes public access to decisions of special masters.  Rather than look to analogues from traditional litigation, W.C. borrowed from FOIA, maintaining that the similarity in wording between one aspect of the Vaccine Act and one aspect of FOIA justified a holding that the statutes should be interpreted similarly.  However, the similarity in wording becomes a more meaningful basis for analysis when two statutes are directed to the same purpose.  See Wachovia Bank v. Schmidt, 546 U.S. 303, 315-16 (2006) (refraining from applying the in pari materia canon for statutes addressing venue and subject matter jurisdiction); Erlenbaugh v. United States, 409 U.S. 239, 243-44 (1972).  But, FOIA and the Vaccine Act do not share a common purpose. Anderson, 2014 WL 3294656, at *7; House, 2012 WL 402040, at *6; but see C.S., 2013 WL 4780019, at *2-3.

Consequently, Mr. Jossart's primary argument based upon W.C. is not accepted.

      B.      Petitioner Has Not Demonstrated a Specific
             Showing Warranting Redaction to Initials

In his motion, Mr. Jossart maintains that redaction is appropriate because the information contained in the May 24, 2024 Decision might interfere with future employment.  Pet'r's Mot. at 2.  However, this argument is not persuasive.

In federal courts, parties must identify themselves.  Fed. R. Civ. Proc. 17(a). In the Court of Federal Claims, the requirement is the same.  U.S. Ct. Fed. Cl., R. 17.  Nevertheless, parties in the federal courts may seek to proceed anonymously.[6]

In evaluating whether certain Native Americans could present an amended complaint with some plaintiffs listed as "Does," the Court of Federal Claims borrowed from a Ninth Circuit case, Does I Thru XXII v. Advanced Textile Corp., 214 F.3d 1058, 1067 (9th Cir. 2000).  Wolfchild v. United States, 62 Fed. Cl. 521,

---

[6] When the vaccinee is a minor, the case may be filed with the minor's initials.  Vaccine Rule 16(b).  Mr. Jossart acknowledges that he was not a minor when he sought compensation. Pet'r's Mot. at 5.

9

553 (2004).[7]  The Ninth Circuit's test from Advanced Textile is just one of multiple formulations of factors trial courts should consider in evaluating a request to proceed anonymously.  For other examples, see Doe v. Frank, 951 F.2d 320, 323 (11th Cir. 1992); K.W. v. Hotlzapple, 299 F.R.D. 438, 441 (M.D. Pa. 2014); Nat'l Ass'n of Waterfront Employers v. Chao, 587 F. Supp. 2d 90, 99 (D.D.C. 2008).  While the precise wording might vary, the tests generally consider several factors including "the party's need for anonymity against the general presumption that parties' identities be available to the public and the likelihood of prejudice to the opposing party."  Wolfchild, 62 Fed. Cl. at 553-54.  These factors are analyzed in reverse order.

*Likelihood of prejudice to opposing party*.  The Secretary knows the identity of Mr. Jossart.  Redacting this name to initials to prevent members of the public from learning this information would not harm the Secretary.

*Public interest in availability of decisions by judicial officers*.  The right of the public to learn about decisions made by members of the judicial branch of their government is based, in part, on the right "to know who is using court facilities and procedures funded by public taxes."  Doe v. Village of Deerfield, 819 F.3d 372, 377 (7th Cir. 2016); accord Sealed Plaintiff v. Sealed Defendant, 537 F.3d 185, 189 (2d Cir. 2008).

Here, information about "who is using court facilities" is available to the public because the Secretary has disclosed some information in the Federal Register.  The notice in the Federal Register provides the petitioner's name and the docket number.  80 Fed. Reg. at 80367.

Consequently, the Vaccine Act's requirement to disclose in the Federal Register actually supports a limited redaction.  Because the public still knows (or can learn) who is using the publicly funded court system, redaction of names to initials is not completely contrary to the presumption of public access to decisions of judicial officers.

*Party's Need for Anonymity*.  Mr. Jossart's request for a redaction of his name and his mother's name to initials is based on potential complications in job searching.  The potential for adverse employment decisions seems speculative and underdeveloped.

---

[7] Although Wolfchild cited Advanced Textiles favorably, W.C. stated that the Ninth Circuit's criteria can be "draconian."  W.C., 100 Fed. Cl. at 459 n.21.

Mr. Jossart argument starts with a basic undisputed proposition: "The May 22, 2024 Decision discusses Petitioner's medical history, including a long history of dysautonomia symptoms and other aspects of Petitioner's physical and mental health, as well as the effects on his life and schooling."  Pet'r's Mot. at 2, citing Decision, slip op at 4-36.  Mr. Jossart recognizes that: "Given the nature of dysautonomia and the expert's opinions, the May 22, 2024 Decision understandably goes into great detail regarding Petitioner's life during his teen and young adult years."  Id.

The next step also seems undisputed.  Mr. Jossart has told his counsel that "his teaching role in Japan concludes soon and he will move back to the United States in August 2024 to begin searching for his next employment opportunity."  Pet'r's Mot. at 3.

The third part is where Mr. Jossart's argument falters.  He asserts that that in searching for employment, there is an "unfortunate likelihood of bias due to medical stigma."  Pet'r's Mot. at 2.  He similarly maintains that "Disclosure of Petitioner's identity with the great amount of medical information, both physical and mental health-related, exposes Petitioner to unfair bias and will realistically cause him to be overlooked for employment."  Id. at 4.  Mr. Jossarts cites three articles.[8]

Mr. Jossart's motion for redaction is premised on the hope that potential future employers will not learn that he suffered medical problems many years ago.  However, the public, including potential employers, could piece together the information by using the decision's docket number and the Federal Register announcement.  See 80 Fed. Reg. at 80367.  Information that is in the public domain is usually not treated as confidential.  See Insulet Corp. v. Eoflow, Co. Ltd., 2024 WL 3016208 at *5 (Fed. Cir. 2024) (discussing trade secrets).  But, the possibility that a person could connect the dots and thereby defeat Mr. Jossart's request for anonymity is only a small factor in denying the motion for redaction.

The main flaw with Mr. Jossart's motion is the lack of specificity.  Relatively little of the June 5, 2024 motion discusses Mr. Jossart's situation.  The motion asserts that he will begin searching for a job after returning from Japan in the next month.  However, the motion does not describe in even the most general

---

[8] The better practice would be for Mr. Jossart to submit articles as numbered exhibits.  See Vaccine Rule 3(b)(2) (stating that a special master should allow a party to "create[e] a record") and Vaccine Rule 8(b)(1) (stating a special master "must consider all relevant and reliable evidence").

11

terms the field in which Mr. Jossart hopes to gain employment.  The motion does not assert that Mr. Jossart has encountered any problems in his current employment.

Quoting Apple Inc. v. Samsung Elecs. Co., 727 F.3d 1214, 1221 (Fed. Cir. 2013), Judge Bryson's opinion in Lipocine states that "a party [seeking to restrict the public's access to court documents] must articulate compelling reasons supported by specific factual findings that outweigh the general history of access and the public policies favoring disclosure, such as the public interest in understanding the judicial process."  Lipocine, 2020 WL 4569473, at *3.  Here, Mr. Jossart has failed to present evidence about his situation that would permit the necessary "specific factual findings" to be made.

This assessment that Mr. Jossart has not met his burden of proof to present a persuasive basis for redacting his name and his mother's name to initials includes a consideration of the three articles that Mr. Jossart has cited.  With varying degrees of persuasiveness, these articles support the proposition that some people with mental health problems face challenges in finding employment.  But, their experiences are far from universal as one article begins "Disabled people experienced a record level of employment in 2023, thanks in large part to remote work."[9]

Finally, Mr. Jossart points to three cases in which special masters have granted redaction when petitioners have raised concerns about their employment. Pet'r's Mot. at 6.  However, these cases have limited usefulness for several reasons.  First, as orders from special masters, they are not binding precedent. Boatmon v. Sec'y of Health & Hum. Servs., 941 F.3d 1351, 1358 (Fed. Cir. 2019). Second, although concerns about employment have justified redactions sometimes, other orders have denied requests for redaction based upon employment.  See, e.g., Krupp v. Sec'y of Health & Hum. Servs., No. 19-501V, 2023 WL 9503417 (Fed. Cl. Spec. Mstr. July 21, 2023).  Third, the orders on which Mr. Jossart relies appear to focus more on alleged harm that might come to a petitioner and appear not to be as concerned about the public's interest.  As discussed in Lipocine, judicial officials are sometimes called upon to assess the public's interest in access to court records even when no one is representing the public's interest.  Without an

---

[9] Whether Mr. Jossart should currently be characterized as a "disabled person" is not entirely clear.  By 2022, Mr. Jossart seemed to be in good health and health problems were not affecting his activities.  Decision at 36.  This improvement in health might mitigate any concerns of any future employer.

entity, such as a newspaper or media company, advancing the public's right to access judicial decisions, it can be difficult to be "vigilant about . . . redaction requests." Lipocine, 2020 WL 4569473, at *7.  Yet, even without an adversary opposing Mr. Jossart's good faith request to redact the decision, a special master must attempt to determine governing legal principles and to find whether the evidence supports the relief requested.[10]

*Assessment*.  Overall, the factors balance against redacting Mr. Jossart's name or his mother's name to initials.  As discussed above, the long-standing tradition of public access to decisions of judicial officers weighs against allowing adults to redact their names.  If speculative concerns about adverse employment actions were sufficient by themselves to justify redaction, then redaction would become the norm as most substantive decisions contain the petitioner's name and most petitioners are concerned about employment.  See 42 U.S.C. § 300aa–12(d)(3)(A)(i) (obligating special masters to issue decisions that "include findings of fact").

## Conclusion

Mr. Jossart's June 5, 2024 motion for redaction of the May 22, 2024 Decision is DENIED.  Furthermore, this order, too, will become available to the public after the time for the parties to propose redactions has passed.

**IT IS SO ORDERED**.

s/Christian J. Moran<br>
Christian J. Moran<br>
Special Master

---

[10] The phrase "attempt to determine governing legal principles" is based upon the lack of Federal Circuit guidance about when special masters should depart from the background principle in which parties are identified by name in opinions from judicial officers.